UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOTTIE M. S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 3:19-cv-01225-GCS[2] |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff applied for disability benefits in April 2017, alleging disability as of March 30, 2016. Plaintiff's claim was denied on August 3, 2017, and upon reconsideration on October 4, 2017. After holding an evidentiary hearing, an ALJ denied the application on May 24, 2019. (Tr. 26-40). The Appeals Council denied review, and the decision of the Administrative Law Judge ("ALJ") became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this

---

[1]  In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]  This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). *See* (Doc. 8 & 12).

Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

1. The ALJ erred in failing to account for deficits in concentration, persistence, or pace in the Residual Functional Capacity ("RFC").

2. The ALJ erred in equating minimal activity with the capacity to perform substantial gainful activity.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed?; (2) Does the plaintiff have a severe impairment?; (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) Is the plaintiff unable to perform her former occupation?; and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the

plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which the plaintiff can perform. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff had not worked at the level of substantial gainful activity during

the period from the alleged onset date through her date last insured. She was insured for DIB through June 30, 2017.

The ALJ found that Plaintiff had the severe impairments of fibromyalgia, obesity, adjustment disorder, post-traumatic stress disorder (PTSD), generalized anxiety disorder, and major depressive disorder.

The ALJ found Plaintiff had the RFC to do the following:

> Perform light work . . . except the claimant can only occasionally balance, stoop, crouch, crawl, kneel and climb ramps or stairs; can never climb ladders, ropes or scaffolds; have no more than occasional exposure to hazards such as unprotected heights; is limited to performing simple, routine, repetitive tasks, with only occasional interaction with coworkers or the general public.

(Tr. 32-33). Based on the testimony of a vocational expert ("VE"), the ALJ concluded that, through the date last insured, Plaintiff was unable to perform any past relevant work but said there were jobs that existed in the national economy that the claimant could have performed.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum & Order. The following summary of the record is directed to Plaintiff's arguments.

### 1. Agency Forms

Plaintiff was born in 1969 and was 47 years old on June 30, 2017, the date last insured. (Tr. 354). Plaintiff said she stopped working in 2015 because of her conditions and for other reasons. Plaintiff said she was let go from her job because she could no

longer remember tasks, and she could not use the computer because of her memory issues. She worked as a customer service representative from October 2007 to July 2009; a security officer from September 2010 to November 2010; a seasonal administrator from October 2011 to December 2011; a nursery teacher from March 2013 to May 2014; and an assistant to a food director from January 2014 to August 2014. (Tr. 313-314).

In a Function Report submitted in July 2017, Plaintiff said she makes her pet's food, gets help taking care of her pet, and says she has no memory. Plaintiff said she needs reminders to take her medicine. Plaintiff said she does the laundry, does the dishes, and goes grocery shopping. Plaintiff said she forgets where everything is when she goes grocery shopping, and she forgets where places are when she has to drive somewhere. Plaintiff said she talks on the phone with her family, and she needs reminders to go places. Plaintiff said her conditions affect her memory, task completion, concentration, understanding, ability to follow instructions, and ability to get along with others. Plaintiff said how long she can pay attention depends on what is going on around her, and she sometimes does not finish what she starts due to forgetting and starting something else. Plaintiff said she follows written instructions as long as she can, and she does not follow spoken instructions well because she forgets. Plaintiff said she gets overwhelmed when stressed, and she does not handle changes in routine well. Plaintiff said memory loss is one of her bigger problems. (Tr. 328-334).

    **2.**    **Evidentiary Hearing**

An attorney represented Plaintiff at the evidentiary hearing in February 2019. (Tr. 47). Plaintiff said her memory problem is one of the biggest issues she has that keeps her

from working. (Tr. 57). Plaintiff said she used to be able to go to the grocery store by herself, but she was in a bad car wreck. (Tr. 59). Plaintiff said she dealt with PTSD, severe anxiety, and depression in 2016 and 2017. Plaintiff said she had night terrors, was afraid to go out, and was worried her ex-husband would kill her if he found her. Plaintiff said she does not do any cooking other than making peanut butter and jelly sandwiches because she cannot cook. Plaintiff also said she does the laundry, dishes, and helps take care of a dog. (Tr. 67-69).

A VE testified that a person with Plaintiff's RFC could not perform their past work. The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. The VE said there were other jobs that exist in the national economy that a person like Plaintiff could do such as unskilled hand packer positions, unskilled cleaner positions, and unskilled production worker positions. The VE said a person who is off task ten percent or more of a workday will ultimately be terminated. The VE also said an absence once a month over two consecutive months would result in termination. (Tr. 81-83).

### 3. Relevant Medical Records

Plaintiff presented to Catherine Coyle, a licensed clinical social worker ("LCSW"), over thirty times between April 2016 and May 2017 reporting feeling upset and angry over being denied her social security disability claim; past physical and sexual abuse by her ex-husband; worry regarding her ex-husband finding her when an order of protection expires; familial concerns; frustration; anxiety; difficulty with memory; PTSD; and struggles with mental challenges. (Tr. 433, 436, 438, 562-63, 565, 567, 569-573, 575, 577-

579, 581, 583, 586, 588, 590, 592, 594, 598, 600, 602, 604, 607, 610-612, 614, 618, 622, 624, 626, 628, 630). LCSW Coyle noted Plaintiff has many areas of everyday living that are challenging; was very interested in her diagnosis; identifies with the idea of being a victim; was shaking uncontrollably; and seemed tired and tense. (Tr. 437, 573, 579, 607). The assessment included anxiety disorder and adjustment disorder with mixed anxiety and depressed mood, and plans included developing a safety strategy; keeping Plaintiff's residence unknown to her children so her ex-husband does not learn the information; maintaining a positive attitude; and using cognitive and behavioral techniques to reduce anxiety. (Tr. 433, 436, 438, 567, 581, 583, 586-590, 592, 594-595, 598, 600, 602, 604, 607, 610-612, 614, 618, 622, 624, 626, 628, 630).

Plaintiff presented to Trent McDaniel, a family medicine specialist at Family Physicians of Alton, on April 27, 2016, reporting memory loss. The assessment included traumatic head injury. (Tr. 544-545). Dr. McDaniel noted Plaintiff had an appropriate mood and affect. (Tr. 548).

Plaintiff presented to Sunil Gangwani, a psychiatrist, seven times between July 2016 and May 2017 reporting depressive disorder; chronic PTSD; major depressive disorder; concerns and stressors regarding her ex-husband; nervousness; relational abuse; and anxiety. (Tr. 657, 659, 661, 664, 666, 668, 671-672, 674-675, 678, 680, 682, 685, 687). Dr. Gangwani noted Plaintiff was cooperative; was calm; had normal speech; was oriented to situation, time, place and person; was alert; had intact memory; had average intelligence; had a worried mood; had a sad mood; smiled appropriately; said, "I could be better"; did not appear depressed; had a pleasant affect; had a constricted affect; had

impaired and limited insight; had impaired judgment; had circumstantial and tangential thought processes; recalled events from prior visits; demonstrated good attention; and had a frustrated mood. (Tr. 659, 664-665, 669, 674-675, 678, 684, 686, 689). Dr. Gangwani said, "I AM STRONGLY CONCERNED ABOUT MALINGERING with the patient." (Tr. 659). The assessment included depressive disorder, chronic PTSD, major depressive disorder, and long-term drug therapy and malingering, and plans included continuing psychotherapy, using coping mechanisms, and medications. (Tr. 659-660, 665, 669-670, 675, 678-679, 681, 686).

Plaintiff presented to Alton Memorial Hospital on July 12, 2016. A mental status examination revealed Plaintiff was anxious, crying, and alert. (Tr. 1181-82).

Plaintiff presented to Pratap Chand, a neurologist, on July 14, 2016, reporting anxiety, PTSD, and memory issues that she attributed to a car accident. Dr. Chand noted Plaintiff was alert and oriented; had clear and concise but slow speech; was tearful; and claimed difficulties with memory. The assessment included depression, anxiety, and PTSD, and plans included medication modifications, continuing psychiatry and continuing cognitive behavioral therapy ("CBT"). (Tr. 414-415).

Plaintiff presented to Dr. McDaniel on July 27, 2016, reporting short-term memory loss and anxiety. The assessment included anxiety, and plans included continuing to see a psychiatrist. (Tr. 550-551).

Plaintiff presented to Louay Omran, a gastroenterologist, on September 30, 2016, and reported that she was continuing to see her psychotherapist. Dr. Omran noted Plaintiff was anxious. (Tr. 413-414).

On October 7, 2016, Lakeitha Haire, a registered nurse, noted a call from Plaintiff's psychiatrist, Dr. Sunil Gangwani, alerting their office that Plaintiff might be getting an Oxycodone prescription refilled by multiple providers. (Tr. 413).

Plaintiff presented to Dr. McDaniel on November 7, 2016. The assessment included anxiety, and plans including continuing to see the psychiatrist. (Tr. 555).

Plaintiff presented to Christopher Beuer, a pain management specialist, on December 14, 2016. Dr. Beuer noted Plaintiff was alert and oriented. The assessment included anxiety. (Tr. 543).

Plaintiff presented to Hollie Yoder, a nurse practitioner at Family Physicians of Alton, on January 12, 2017. (Tr. 1461). A mental status examination revealed Plaintiff had normal memory; was oriented to time, place, person and situation; and had an appropriate mood and affect. (Tr. 1464).

Plaintiff presented to Ajitesh Rai, a neurologist, on January 20, 2017. (Tr. 711). A review of systems was positive for inappropriate interaction, anxiety, depression, mood swings, and memory impairment. Dr. Rai noted Plaintiff was alert and oriented to time, place and person; had monotonous speech; and had an appropriate mood and affect. (Tr. 713-714).

Plaintiff presented to Dr. Omran on February 3, 2017. Dr. Omran noted Plaintiff was anxious. Plans included continuing neuromodulation/psychotherapy. (Tr. 410-411).

Plaintiff presented to Olusegun Coker, a family medicine specialist at Family Physicians of Alton, on February 9, 2017. (Tr. 1017). Dr. Coker noted Plaintiff had an appropriate mood and affect. (Tr. 1019).

Plaintiff presented to Alton Memorial Hospital on February 9, 2017, and a mental status examination revealed Plaintiff was cooperative; was crying; was alert and oriented; and had clear speech. (Tr. 1110).

Plaintiff presented to Dr. Rai on February 24, 2017. A review of systems was positive for inappropriate interaction. Dr. Rai noted Plaintiff had an appropriate mood and affect. (Tr. 707-709).

Plaintiff presented to Dr. Rai on March 30, 2017. A review of systems was positive for inappropriate interaction. Dr. Rai noted Plaintiff had an appropriate mood and affect. (Tr. 703-705).

Plaintiff presented to Michael Liu, a neurologist, on April 17, 2017. A review of systems was positive for inappropriate interaction. Dr. Liu noted Plaintiff was in no acute distress; was alert; had fluent speech; had a normal mood and affect; and had intact judgment and insight. (Tr. 699-701).

Plaintiff presented to Barbara Balabas, an optometrist, on April 27, 2017. Dr. Balabas noted Plaintiff was fully alert and oriented to time, place and person; had fully intact recent memory; had a pleasant mood; had a normal affect; and had anxiety disorder, depression, and short-term memory loss. (Tr. 1507-09).

Plaintiff presented to Dr. Balabas on May 11, 2017. Plaintiff reported anxiety disorder, depression and short-term memory loss. Dr. Balabas noted Plaintiff was fully

alert and oriented to time, place and person; had fully intact recent memory; had a normal affect; and had a pleasant mood. (Tr. 1505-06).

Plaintiff presented to Dr. Rai on May 15, 2017. A review of systems was positive for inappropriate interaction. Dr. Rai noted Plaintiff had an appropriate mood and affect. (Tr. 695-697).

Plaintiff filled out a pain questionnaire on May 22, 2017, reporting anxiety; depression; memory loss; having little interest or pleasure in doing things nearly every day; feeling down, depressed, or hopeless nearly every day; feeling bad about herself nearly every day; trouble concentrating on things nearly every day; and sometimes feeling that things are too overwhelming. (Tr. 998, 1000-02).

Plaintiff presented to Dr. Omran on May 26, 2017. Dr. Omran noted Plaintiff was alert and anxious. (Tr. 403-404).

Plaintiff presented to Dr. Rai on June 26, 2017. Dr. Rai noted Plaintiff was alert and oriented to time, place, and person and had a normal mood and affect. (Tr. 717).

## ANALYSIS

First, Plaintiff asserts the ALJ erred in failing to account for deficits in concentration, persistence, or pace in the RFC.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all the limitations that are supported by the record. *See* Y*urt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation

must be accounted for in the hypothetical question posed to the VE. The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Yurt*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Here, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation [the ALJ has] found in the 'paragraph B' mental functional analysis." (Tr. 32). Additionally, the state agency consultants who reviewed the record concluded that Plaintiff's mental impairments were not severe, but the ALJ rejected those opinions. (Tr. 37, 183-184, 199-200).

In regard to Plaintiff's mental limitations, the ALJ's RFC finding says she is, "limited to performing simple, routine, repetitive tasks, with only occasional interaction with coworkers or the general public." (Tr. 33). Plaintiff suggests this language does not adequately account for moderate limitations in concentration, persistence or pace. The

Court agrees. A limitation to simple, routine and rote tasks does not account for difficulties in concentration arising from mental health issues. *See Varga*, 794 F.3d at 815. Moreover, the ALJ used the terminology that the Seventh Circuit has continually viewed as insufficient. As a result, remand is required.

There are two recent Seventh Circuit cases that speak directly to this issue: *Martin v. Saul*, 950 F.3d 369 (7th Cir. 2020) and *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). In *Martin*, the court held the ALJ correctly accounted for Martin's concentration, persistence or pace limitations by not "assuming that restricting [Martin] to unskilled work would account for her mental impairments." *Id*. at 374. "The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented." *Id*. The ALJ in *Crump* used language in the RFC that the Seventh Circuit has repeatedly found insufficient such as, "simple, routine, repetitive tasks with few workplace changes." *Crump*, 932 F.3d at 569. The court held the ALJ failed to incorporate limitations like Crump's likelihood of being off task twenty percent of the time. *Id*. at 570.

Here, the ALJ did not go to the lengths as the ALJ in *Martin* did. The present case is similar to *Crump* in that the ALJ limited Plaintiff to work involving "simple, routine, repetitive tasks." (Tr. 33). This, as established above, is not enough. "Observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump*, 932 F.3d at 570. The Seventh Circuit put it succinctly in *Martin*:

As we have labored mightily to explain, however, the relative difficulty of

> a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin*, 950 F.3d at 373-374. The VE testified that a person who is off task ten percent or more of a workday will ultimately be terminated. (Tr. 83). The VE also said an absence once a month over two consecutive months would result in termination. (Tr. 83). Without more, the RFC does not adequately account for moderate limitations in concentration, persistence or pace.

The Commissioner relies in part on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that the ALJ erred by omitting a reference to a moderate limitation in concentration, persistence or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498.  That case is distinguishable from the case at hand. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability to concentrate well enough to work for a sustained period.

*Crump*, 932 F.3d at 571. Here, as in *Crump*, the ALJ noted Plaintiff has a moderate impairment with concentration, persistence and pace. (Tr. 32). Additionally, Plaintiff testified that her memory problem is one of the biggest issues she has that keeps her from working. (Tr. 57).

The Commissioner argues that there is no required language when it comes to the mental RFC and limitations in concentration, persistence or pace. Although there may be no required language, there is still language that is deemed insufficient for concentration, persistence, or pace purposes, and the ALJ used that insufficient language in the RFC without adding more.

Lastly, the Commissioner points out that the "B" criteria have been amended and attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's ability to maintain concentration, persistence or pace independently, appropriately, effectively, and on a sustained basis is fair. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FED. REG. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). But a moderate limitation is not the same as "no" limitation. A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited." Moderate is between mild and marked. *See* 81 FED. REG. 66138, 66164. Therefore, a moderate limitation is more than a slight limitation, and the ALJ may not overlook the designation of moderate limitations in the RFC. Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FED. REG. 66138, 66147.

For these reasons, the ALJ did not adequately account for concentration, persistence or pace within the RFC finding. Therefore, remand is required.

As a sub-issue to Plaintiff's concentration, persistence or pace argument, Plaintiff goes on to suggest the ALJ's social restriction was insufficient to capture Plaintiff's limitations with concentration, persistence or pace. However, Plaintiff failed to elaborate, therefore, creating a gap in her argument. Plaintiff's argument is little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion regarding Plaintiff's social limitations.

For Plaintiff's second issue, she asserts the ALJ erred in equating minimal activity with the capacity to perform substantial gainful activity. "An ALJ may not equate activities of daily living with those of a full-time job . . . But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged. *Id*. at 593.

Plaintiff is correct that the ALJ referred to Plaintiff's activities of daily living in her decision. However, the problem is not that the ALJ put too much focus on her activities of daily living. As the Seventh Circuit indicated in *Jeske*, an ALJ is not forbidden from

considering activities of daily living. The ALJ just cannot use that information and equate it to full-time work. Here, the ALJ did not equate Plaintiff's activities of daily living to full-time work. The ALJ simply referred to Plaintiff's activities of daily living to formulate her understanding of Plaintiff's condition, while considering other things such as subjective statements and objective opinions and findings. Therefore, the ALJ did not err as Plaintiff suggests. However, the ALJ erred by essentially ignoring the evidence regarding activities of daily living that was not supportive of her ultimate conclusion.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted). The ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Plaintiff argues that the ALJ failed to note how Plaintiff described struggling with activities of daily living, including having no memory to partake in activities with friends; needing help with buttons, zippers and showering; needing food cut up for her; needing

a change of clothes and toilet paper with her; needing reminders; forgetting items when shopping; needing help from others with yard work; and taking twice as long when shopping alone.

Although the ALJ need not discuss every bit of evidence available, Plaintiff is still correct. The ALJ more consistently spoke of activities of daily living that supported her ultimate conclusion while rarely mentioning activities, as listed above, that might have weakened her conclusion regarding Plaintiff's concentration, persistence or pace limitations. The ALJ repeated several times Plaintiff's efforts regarding her disability claim and personal injury lawsuit which, alone, is not cause for remand, but it does further support Plaintiff's arguments as to the ALJ's lack of discussion regarding activities of daily living that she struggled with. It is important to note, as well, that an ALJ must be careful not to equate a plaintiff's efforts in pursuit of a disability claim or lawsuits with full-time work. An ALJ need only engage sufficiently with the evidence and provide a logical bridge between the evidence and the ALJ's conclusion. These unacknowledged activities of daily living point to a level of cherry-picking that, although not the most severe of circumstances, is enough to require remand.

This Memorandum & Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**Dated: October 19, 2020.**

Digitally signed by Judge Sison 2
Date: 2020.10.19 13:44:29 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**